# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| HERBILICIOUS MUSIC, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:03-CV-124 CAS |
| | ) | |
| JFM INVESTMENTS, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the court on plaintiffs' motion for summary judgment. Defendant Pete Katsaliros filed a memorandum in opposition. Plaintiffs filed a reply. For the following reasons, the Court will grant plaintiffs' motion for summary judgment.

## I. Introduction

Plaintiffs Herbilicious Music, Virginia Beach Music, Gold Daddy Music, J. Albert & Son (USA), Inc., EMI April Music, Inc., Purple Rabbit Music, Varry White Music, EX VW, Inc., and Loc'Out Music filed this copyright infringement action against defendants JFM Investments, Inc. and Pete Katsaliros. Plaintiffs later voluntarily dismissed their claims against JFM Investments, Inc., leaving Katsaliros as the only remaining defendant. In their First Amended Complaint, plaintiffs allege that Katsaliros infringed their respective copyrights to four compositions by giving public performances of those compositions without the plaintiffs' permission.

Plaintiffs filed a motion for summary judgment and requested injunctive relief, statutory damages of $60,000, costs, and attorney's fees. Katsaliros does not deny that he infringed plaintiffs' copyrights, rather he asserts that the damages are improper. First, Katsaliros asserts that injunctive relief is unnecessary because he no longer operates a lounge or bar. Katsaliros states that plaintiffs'

statutory damages request is excessive because the violation was not knowing and willful and plaintiffs cannot hold him liable for fees due before he owned the property.

## II.  Summary Judgment Standard

This Court must grant summary judgment if, based upon the pleadings, admissions, depositions and affidavits, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Board of Education, Island Trees v. Pico, 457 U.S. 853, 863 (1982).  The moving party must initially demonstrate the absence of an issue for trial.  Celotex Corp., 477 U.S. at 323. Any doubt as to the existence of a material fact must be resolved in favor of the party opposing the motion.  Board of Education v. Pico, 457 U.S. at 863.  Nevertheless, once a motion is properly made and supported, the non-moving party may not rest upon the allegations in his pleadings but must instead set forth specific facts showing that there is a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(e); Buford v. Tremayne, 747 F.2d 445, 447 (8th Cir. 1984).

## III.  Discussion

### A.  Facts

The Court reviewed plaintiffs' statement of undisputed material facts and defendant's statement of disputed material facts.  The Court finds that there are no genuine issues of material fact. In accordance with Local Rule 4.01(E), all facts set forth in plaintiffs' statement of undisputed material facts are deemed admitted if they were not specifically controverted by the defendant.  See E.D. Mo. L.R. 4.01(E).  Also, only facts supported by evidence in the record will be deemed to be true.  For purposes of summary judgment, the Court finds the following facts to be true.

Plaintiffs are members of the American Society of Composers, Authors, and Publishers ("ASCAP").  (Jenkins Aff. ¶ 4).  At the time of the alleged infringement and at the present time,

plaintiffs are the copyright owners to the musical compositions, (1) "Wild Thing," (2) "Give Me One Reason," (3) "You Shook Me All Night," and (4) "Pony."[1] (Jenkins Aff. ¶ 3, Exs. A-D). ASCAP is an unincorporated membership association, whose members write and publish musical compositions. (Demerritt Aff. ¶ 3). As ASCAP members, plaintiffs have granted ASCAP a non-exclusive license to authorize public performances of the members' copyrighted songs. Id. ASCAP contacts owners and operators of establishments that perform ASCAP members' music to advise them of their obligations under the copyright law and to offer them ASCAP licenses. (Demerritt Aff. ¶ 4).

The Three Rivers Inn is located at 2115 N. Westward Boulevard in Poplar Bluff, Missouri. (Am. Compl. ¶ 4). Defendant Katsaliros was hired as manager of the Three Rivers Inn (formerly known as the Holiday Inn) in 1993. (Katsaliros Aff. ¶ 3). At the time Katsaliros became manager, the Three Rivers Inn owner was JFM Investments. (Katsaliros Aff. ¶ 4). JJ's Lounge is a bar at the Three Rivers Inn. (Katsaliros Dep. 35:5-6). Katsaliros purchased the hotel in 1999 or early 2000. (Katsaliros Aff. ¶ 9). Katsaliros did not notify ASCAP of the change in ownership from JFM Investments to himself. (Katsaliros Dep. 47:12-15).

Liquor was sold at JJ's Lounge. (Katsaliros Dep. 35:2-5). Katsaliros filed an application for renewal of the liquor license for JJ's Lounge. (Katsaliros Dep. 35:13-15; Copeland Aff. Ex. 4). The liquor license renewal application for the bar filed by Katsaliros was filed in the name of JFM Investments and stated that Katsaliros was president and managing officer of the corporation. (Copeland Aff. Ex. 4). Katsaliros hired disc jockeys and people to play karaoke with their own equipment as part of the entertainment at JJ's Lounge. (Katsaliros Dep. 21:13-22).

---

[1]The compositions were as follows: "Wild Thing" as performed by Tone Loc, "Give Me One Reason" as performed by Tracy Chapman, "You Shook Me All Night," as performed by ACDC, and "Pony" as performed by Ginuwine.

In May 1994, Katsaliros, as manager for JFM Investments, signed an ASCAP License Agreement on behalf of JFM Investments. The term of the License Agreement was from January 1, 1994 to December 31, 1998. The annual expense reports during this time period, upon which license fees are calculated, were filed by the hotel with "Pete Katsaliros, General Manager" shown as the signature on behalf of the licensee. (Demerritt Aff. ¶ 8). The hotel and ASCAP entered into an indefinite interim extension until April 30, 2000 and then until May 31, 2000. (Demerritt Aff. ¶¶ 9-12). ASCAP mailed letters dated April 21, 2000 and May 31, 2000 to the hotel advising that the hotel's license with ASCAP would expire on May 31, 2000. (Demerritt Aff. ¶ 12). The May 31, 2000 letter enclosed a new ASCAP license agreement for the hotel facility for execution, but that new license agreement was never returned to ASCAP. (Demerritt Aff. ¶ 13). After the license was terminated effective May 31, 2000, ASCAP sent letters dated October 30, 2001, June 3, 2002, and June 26, 2002 that offered to reinstate the license if the fees due at the termination of the license agreement were paid and a new license agreement was executed. (Demerritt Aff. ¶ 14, Exs. 1-3).

ASCAP hired an investigator to visit JJ's Lounge on August 3, 2002, and November 9, 2002, to determine if Katsaliros was publicly performing ASCAP members' music. (Demerritt Aff. ¶ 16). The investigator, Russell W. Corbin, heard four musical compositions during those two visits: (1) "Wild Thing," (2) "Give Me One Reason," (3) "You Shook Me All Night," and (4) "Pony." (Am. Compl., Ex. A). During the August 3, 2002 visit, a disc jockey played music via compact discs played through four speakers near the dance floor to the lounge. (Demerritt Aff. ¶ 18). There was a cover charge to enter JJ's Lounge and alcoholic beverages were sold to patrons. (Id.) There were 27 patrons present when Corbin entered JJ's lounge and at one point, there were 70 patrons present. (Id.) During the November 9, 2002 visit, there was a disc jockey who played music via compact discs played through four speakers near the dance floor to the lounge. (Demeritt Aff. ¶ 19). There were

4

46 patrons present at JJ's Lounge when Corbin arrived and at one point there were more than 80 patrons present. (Id.) Katsaliros has no knowledge of what songs were performed at the Three Rivers Inn and JJ's Lounge on August 2, 2002 and November 9, 2002. (Katsaliros Dep. 15:3-24; 29:13-22). Katsaliros was not at the lounge on those nights. (Id.).

At the time the amended complaint and answer were filed, Katsaliros controlled, operated, and maintained the Three Rivers Inn. (Am. Compl. ¶ 4, Answer to Am. Compl. ¶ 4). Katsaliros closed the Three Rivers Inn and JJ's Lounge in March 2004 and the entire hotel facility was sold in May 2004. (Katsaliros Aff. ¶ 29).

### B. Copyright Infringement

Copyright owners have the exclusive right to perform or authorize others to perform their copyrighted works. 17 U.S.C. § 106. "Anyone who violates any of the exclusive rights of the copyright owner . . . is an infringer of the copyright . . . ." 17 U.S.C. § 501(a). Plaintiffs must prove four elements to assert copyright infringement against Katsaliros: (1) authorship of the songs, (2) ownership of the copyrights, (3) compliance with the statutory requirements to obtain the copyrights, and (4) unauthorized public performance. Unicity Music, Inc. v. Omni Communications, Inc., 844 F. Supp. 504, 507 (E.D. Ark. 1994). "A prima facie case as to the first three elements may be made by submitting certified copies of copyright registration certificates and any subsequent assignments." Cross Keys Publ'g Co. v. LL Bar T Land & Cattle Co., 887 F. Supp. 219, 222 (E.D. Mo. 1995) (citing Van Halen Music v. Palmer, 626 F. Supp. 1163, 1165 (W.D. Ark. 1986)). Plaintiffs have provided certified copies of the copyright registration certificates and any subsequent assignments. (Jenkins Aff., Exs. A-D). Katsaliros has not challenged the validity of the copyright registration certificates and assignments submitted by the plaintiffs. Therefore, the Court finds that plaintiffs have established the first three elements of their prima facie case.

As to the fourth element, plaintiffs must establish that there was an unauthorized public performance of the copyrighted works.

> To perform or display a work "publicly" means to (1) to perform or display it at a place open to the public or at any place where a substantial number of persons outside of a normal circle of a family and its social acquaintances is gathered; or (2) to transmit or otherwise communicate a performance or display of the work to a place specified by clause (1) or to the public by means of any device or process, whether the members of the public capable of receiving the performance or display receive it in the same place or in separate places and at the same time or at different times.

17 U.S.C. § 101. "To 'transmit' a performance or display is to communicate it by any device or process whereby images or sounds are received beyond the place from which they are sent." Id. "Copyright infringement is in the nature of a tort, for which all who participate in the infringement are jointly and severally liable." Cross Keys, 887 F. Supp. at 222 (citations omitted). The requirements for a finding of vicarious liability for copyright infringement are the right and ability to supervise the infringing activity and an obvious direct financial interest in exploitation of copyrighted materials. RCA/Ariola Int'l, Inc. v. Thomas & Grayston Co., 845 F.2d 773, 781 (8th Cir. 1988).

In this case, Katsaliros admits that on August 2, 2002, and November 9, 2002, the disc jockey at JJ's lounge publicly performed the four songs at issue without authorization from ASCAP. Katsaliros knew that he did not have a license for JJ's Lounge to perform ASCAP compositions and knew that a license was necessary if those compositions were performed or transmitted at the bar. Katsaliros had the right and ability to supervise the infringing activity and an obvious direct financial interest in exploitation of copyrighted materials because the lounge received compensation from patrons who paid to enter and drink at the establishment. Therefore, the Court finds that a prima facie case for copyright infringement has been established. Accordingly, the Court will enter summary judgment for the plaintiffs.

## C. Damages

The only dispute in this case is the appropriate amount of damages to be awarded.  Plaintiffs request permanent injunctive relief, statutory damages in the amount of $60,000, $724.20 for costs, and $19,607.59 for attorney's fees.  Katsaliros asserts that permanent injunctive relief is unnecessary and the amount of statutory damages sought is excessive.

### 1.  Injunctive Relief

"Any court having jurisdiction of a civil action arising under [the Copyright Act] may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  "Once liability is established, courts will grant permanent injunctions if there is a substantial likelihood of future infringements.  Further, to prevent future infringements of copyrights held by ASCAP members, courts have extended the injunction's scope beyond individual plaintiffs' copyrights to reach any musical composition licensed through ASCAP."  Cross Keys, 887 F. Supp. at 223 (citations omitted).  Plaintiffs seek a permanent injunction enjoining defendant from performing any and all music in the ASCAP repertory without a license or permission from the composer.  In support, plaintiffs assert that Katsaliros was well aware of the copyright licensing requirements and proceeded to engage in unlawful public performances of copyrighted material.  Further, plaintiffs contend that Katsaliros still has not obtained a license to publicly perform their copyrighted works.

Katsaliros responds that because he no longer operates any lounge or bar or any other place of business for public entertainment, accommodation, amusement, and refreshment, the threat of future infringement is not substantial.  Katsaliros states that his failure to obtain a license after he bought the hotel was the result of a dispute about whether he was responsible for licensing fees owed by JFM Investments.  Katsaliros asserts that he tried to obtain a new licensing agreement, but ASCAP

7

took his money and applied it to the debt owed by JFM Investments. (Katsaliros Aff. ¶¶ 15-18, 20). Katsaliros does not believe that he has personal liability for the licensing fees incurred by JFM Investments before he bought the facility. (Katsaliros Aff. ¶ 20, 35). ASCAP would not issue Katsaliros a renewed license unless Katsaliros paid audit and licensing fees due at the time the original license was terminated. (Demerritt Aff. ¶ 14).

The Court finds that injunctive relief is appropriate in this case. The Court accepts Katsaliros's statement that currently he does not own any lounge, bar, or any other place where copyrighted works could be publicly performed, however Katsaliros could purchase such a facility in the future. If the Court did not issue a permanent injunction at this time, Katsaliros could buy another establishment and infringe on plaintiffs' or other ASCAP members' copyrights. Because ASCAP and Katsaliros dispute whether Katsaliros owes license fees incurred by JFM Investments prior to the year 2000, it is highly unlikely that Katsaliros could obtain a license to perform ASCAP's music. The Court finds that because of the continuing dispute over the amount of fees due and the inability of Katsaliros to obtain a license from ASCAP, a permanent injunction is necessary. The Court will issue a injunction permanently enjoining and restraining Katsaliros from publicly performing any copyrighted musical compositions in the ASCAP repertory without proper authorization.

### 2. Statutory Damages

A copyright owner may elect to recover actual damages and profits or an award of statutory damages for all infringements involved in the action, for a sum not less than $750 or more than $30,000. 17 U.S.C. § 504(c)(1). The following factors may be considered in determining the appropriate amount of statutory damages: (1) the expenses saved and profits reaped by defendants in connection with the infringement, (2) revenues lost by plaintiffs, and (3) whether the infringement

was willful and knowing or accidental and innocent. <u>Cross Keys</u>, 887 F. Supp. at 224. District courts have wide discretion in determining the size of a statutory damages award. <u>Id.</u> at 223.

Plaintiffs seek a statutory damages award of $15,000 per infringement for total damages of $60,000. In support of their request, plaintiffs assert that (1) Katsaliros had personal knowledge of copyright licensing requirements at the hotel facility, because he signed the ASCAP license in May 1994 as general manager; (2) the ASCAP license terminated on May 31, 2000 and ASCAP sent numerous notices of the license termination; (3) Katsaliros was given repeated opportunities to procure a license; and (4) Katsaliros remained unlicenced and infringed on plaintiffs' copyrights depriving them of license fees in excess of $15,000. Further, plaintiffs claim that ASCAP incurred expenses of $1,061.84 to obtain evidence of the infringing performances in this case.

In their calculation of fees, plaintiffs include licencing fees that were due under the licensing agreement that terminated on May 31, 2000, plus license fees that would have been owed if the hotel had been licensed from that time through the end of 2003, which is $15,021.70. Plaintiffs assert that it is appropriate to consider the license fees owed from the 1993-1999 period, because Katsaliros was the general manager of JFM Investments and hired a disc jockey and people to play karaoke. Plaintiffs allege that Katsaliros had the right and ability to supervise musical performances and had a direct financial interest in such activities that would subject him to vicarious liability with the previous owner of the hotel. Plaintiffs estimate that they lost licensing fees totaling $8,335.00 from 1999 through the end of 2003. (Demerritt Aff. ¶ 34).

Katsaliros asserts that he did make an effort to pay for a renewed license agreement because he forwarded ASCAP a payment of $2,116.00 in April 2000, but ASCAP applied it to the amount owed by JFM Investments. Also, Katsaliros asserts that he forwarded requested expenditure statements for the years 1999 through 2002, when requested to do so by plaintiffs' counsel.

Katsaliros asserts that there is no evidence that any ASCAP licensed music was publicly performed on any occasion other than the two dates previously discussed. Katsaliros asserts that he is not liable for statutory damages for the failure of prior owners to pay the balance due on the licensing agreement from 1993 to 1999. Finally, Katsaliros states that an award of $60,000 is excessive.

The Court finds that the infringement was knowing and willful, but will only award statutory damages in the amount of $13,000 ($2,000 per infringement and $5,000 for knowing and willful infringement). To reach this sum, the Court first added the estimated licensing fees from 2000 to 2003 (2000--$1889.00; 2001-- $1730.00; 2002--$1537.00; 2003--$1568) for a total of $6,724.00. (Demerritt Aff. ¶ 20). Then, the Court added the cost of the investigation ($1,061.84) to the licensing fee total, which equals $7,785.84 or $1946.46 per infringement. Then, the Court added $5,000 to the total because the infringement was willful and knowing. The Court rounded the total to $13,000.00 (2,000 per infringement plus $5,000 because it was willful and knowing). Therefore, defendant will be ordered to pay statutory damages in the amount of $13,000.00

In the exercise of its discretion, the Court will not award plaintiffs money for the amounts due on the licensing agreement terminated in May 2000. Plaintiffs have cited no authority to support their recovery of fees for an amount due on a contract as statutory damages in a copyright infringement case. The basis of this action is the infringement of plaintiffs' copyrights regarding four musical compositions in 2002. (Am. Compl. ¶¶ 1-2, 10-11). Plaintiffs have not alleged that Katsaliros infringed their copyrights during the time period of 1993-1999. The Court has not found any case where a defendant was held liable for copyright infringement because there was a balance due on a licensing agreement. All of the cases found by the Court addressing vicarious liability held managers or owners vicariously liable for their personal actions or those of their agents or employees for infringing copyrights. See, e.g., Pinkham v. Sara Lee Corp., 983 F.2d 824, 834 (8th Cir. 1992)

(president-shareholder and independent agent held personally and vicariously liable for copyright infringement because they had ability to supervise sale of copied books and made a profit); RCA/Ariola, 845 F.2d at 781-82 (retailors held vicariously liable for employees' assistance to customers in copying copyrighted material); Little Mole Music v. Spike Inv., 720 F. Supp. 751, 755-56 (W.D. Mo. 1989) (partners of company held vicariously liable because they had right and ability to license machine and misuse was for financial gain).

The Cross Keys case cited by plaintiffs does not provide support for recovery of the licensing fees due under the terminated licensing agreement. In Cross Keys, the individual defendants admitted in their answer that they shared joint responsibility for the control of the corporation, the acts complained of were done with their active assistance, and they received a financial benefit from the public performance of copyrighted work. Cross Keys, 887 F. Supp. at 223. The vicarious liability of the Cross Keys defendants stemmed from the public performance of the copyrighted work. Even if Katsaliros is responsible for the fees due on the terminated agreement, they are not recoverable here and the Court will not use that amount to increase the statutory damages award.

### 3. Costs and Attorney's Fees

In an action under the Copyright Act, the Court in its discretion may award full recovery of costs including a reasonable attorney's fee to the prevailing party. 17 U.S.C. § 505. "Among the factors a district court can consider in deciding whether to award attorney's fees are 'frivolousness, motivation, objective unreasonableness (both in the factual and the legal components in the case) and the need in particular circumstances to advance considerations of compensation and deterrence.'" Mary Ellen Enters., Inc. v. Camex, Inc., 68 F.3d 1065, 1072 (8th Cir. 1995) (citing Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n. 19 (1994)). "Bad faith or willfulness is not a prerequisite to an award of attorney's fees." Mary Ellen, 68 F.3d at 1072.

Plaintiffs assert that Katsaliros's infringing actions necessitated bringing this lawsuit to protect their copyrighted works. Further, plaintiffs contend that Katsaliros could have substantially reduced the attorney's fees if he had accepted ASCAP's requests that he provide information, procure a license, or settle this matter. Plaintiffs filed an affidavit with their reply memorandum requesting attorney's fees in the amount of $19,607.59 and costs in the amount of $724.20. Katsaliros did not directly address plaintiffs' request for attorney's fees.

The Court believes that an award of attorney's fees is appropriate in this case. Plaintiffs should be compensated for bringing this action and an award of attorney's fees could deter future infringing conduct. The affidavit submitted by plaintiffs with their reply memorandum does not set forth the basis for the hourly rates or the experience of each person who performed the services. A list of total hours per person is not sufficient and counsel should give some guidance as to what services were provided. The Court will order plaintiffs to file a motion for attorney's fees and costs within 15 days of the date of this order. In support of their motion for attorney's fees, plaintiffs' counsel should provide an affidavit setting forth the number of hours counsel spent on each itemized service pertaining to this matter, the hourly rate(s) used to arrive at the charges for those services, the basis for such hourly rates, and the identity and experience of each person who performed the relevant services.

## IV. Conclusion

The Court will grant plaintiffs' motion for summary judgment. The Court will enter a injunction permanently enjoining and restraining Katsaliros from publicly performing any copyrighted musical compositions in the ASCAP repertory without proper authorization. The Court will grant plaintiffs statutory damages in the amount of $13,000.00. Finally, the Court will award plaintiffs costs and attorney's fees. The Court finds that the $13,000 in statutory damages and the assessment

of costs and attorney's fees will provide plaintiffs with a fair and just amount of damages. Plaintiffs will be ordered to submit a motion for costs and attorney's fees with supporting documentation within 15 days of the date of this order.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion for summary judgment is **GRANTED**. [Doc. 29].

**IT IS FURTHER ORDERED** that defendant Pete Katsaliros is permanently enjoined and restrained from publicly performing any copyrighted musical compositions in the ASCAP repertory without proper authorization.

**IT IS FURTHER ORDERED** that plaintiffs are awarded statutory damages in the amount of Thirteen Thousand Dollars ($13,000.00).

**IT IS FURTHER ORDERED** that within fifteen (15) days of the date of this order, plaintiffs shall file a motion for attorney's fees along with an affidavit setting forth the number of hours counsel spent on each itemized service pertaining to this matter, the hourly rate(s) used to arrive at the charges for those services, the basis for such hourly rates, and the identity and experience of each person who performed the relevant services.

**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this 6th day of June, 2005.